Filed 3/26/13  In re J.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J. B., a Person Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | C071191 |
| Plaintiff and Respondent, | (Super. Ct. No. JD231069) |
| v. | |
| D. B., | |
| Defendant and Appellant. | |

D. B. (father) appeals from the juvenile court's jurisdictional and dispositional orders which removed the minor J. B. from his custody and granted him reunification services.  (Welf. & Inst. Code,[1] §§ 355, 358.)  Father contends no substantial evidence supported the court's findings under section 300, subdivision (b), that father's drug habit

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

1

put the minor at substantial risk of serious physical harm, and that removal from his custody was required. We affirm.

Mother's appeal was dismissed on September 27, 2012, pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835.

FACTUAL AND PROCEDURAL BACKGROUND

By a section 300 petition filed May 27, 2011, Sacramento County Department of Health and Human Services (the department) alleged:

Father failed to protect the minor in that he left her in the care of mother (A. H.), knowing that mother had a substance abuse problem and a mental health problem, and thereafter gave the department misleading information regarding mother's and the minor's whereabouts.

Mother had an active and untreated mental health condition and a long history of abusing methamphetamine and other illicit substances, and had refused or failed to benefit from voluntary services to deal with these problems. Mother had previously lost custody of two half siblings of the minor due to her drug problem, and both had since been adopted. On or about the date of the minor's birth (August 7, 2010), the minor tested positive for methamphetamine.

In July 2011, the juvenile court sustained the petition as to mother, but found the department had failed to meet its burden of proof as to father. The court placed the minor with father on condition that the parents refrain from living together and that father submit to random drug testing for 30 days; mother received reunification services. The department was authorized to require father to submit to an alcohol and other drug assessment (assignment).

In November 2011, alleging that father tested positive for methamphetamine on three different dates in July and August 2011, the department filed a section 388 petition seeking court-ordered drug treatment for him. On December 28, 2011, the court ordered

2

father to participate in the specialized treatment and recovery program (program) and dependency drug court, and to test for drugs until he reported to the program intake.

On January 4, 2012, the department filed a status review report recommending continued dependency for the minor, continued placement with father (but only if he tested negative for drugs and actively engaged in substance abuse treatment), and termination of mother's services.

The report stated that mother was arrested on October 24, 2011, for felony possession of narcotics and was incarcerated in county jail with an expected release date of June 22, 2012. Father was arrested at the same time on an outstanding misdemeanor warrant; both parents were found by law enforcement together in father's vehicle. Father had not informed the social worker of his arrest and the social worker did not know where the minor had been during father's arrest and incarceration.

Mother's program case was closed for nonparticipation in August 2011. Mother had not contacted the department or enrolled in parenting and counseling groups since the minor was released to father's care in July 2011. Mother had not visited the minor in the last six months.

Father tested positive for methamphetamine at his program intake on December 29, 2011. He had been referred to strategies for change for outpatient treatment, but would be reassessed for a higher level of treatment if he continued to test positive. He did so again on January 3, 2012, but denied methamphetamine use and blamed his positive results on kidney stones.

At an in-home review hearing on January 6, 2012, the parties submitted on the report. The juvenile court continued the minor's placement with father and extended mother's reunification services.

On February 3, 2012, the department filed a subsequent supplemental petition requesting placement of the minor in foster care. (§§ 342, 387.) The petition alleged that father had tested positive for methamphetamine nine times from July 2011 to January

3

2012, had missed a test in January 2012, had not acknowledged his substance abuse problem, and had refused to enter residential treatment as recommended by his program worker on January 19, 2012.

The department's application for protective custody further alleged: At the January 19, 2012, program meeting, father was offered the chance to place the minor in a voluntary placement so that he could enter residential substance abuse treatment. He declined, indicating he could refrain from further methamphetamine use. Nevertheless, he had two subsequent positive tests for methamphetamine. He still blamed these results on kidney stones, but this explanation seemed implausible. His program worker said the results came from "oral swabs" which showed recent methamphetamine use and could not have been processed or affected by the kidneys; in any event, the social worker knew of no information suggesting that kidney stones can cause a positive methamphetamine test. Moreover, father had recently obtained a prescription for pain medication. The program's policy would preclude testing father for up to 30 days while he was taking such medication, and if he continued to do so after 30 days, it would close his case. Therefore, he had been referred to strategies for change for interim testing.

On February 10, 2012, over father's objection, the juvenile court ordered the minor detained.

On February 28, 2012, father was dismissed from dependency drug court for failure to participate.

The department's jurisdictional report, signed February 29, 2012, recommended continued placement for the minor in the foster home, where she was adjusting well. The report also recommended bypassing services to both parents because they had failed to address their drug problems.

On January 31, 2012 (before the minor's detention), a social worker intern met with father and the minor at father's residence. It was organized, clutter-free, and well

stocked with food. The minor stayed with father's roommate, "Jimbo," while father was working.

Mother had never had any concerns about father's alleged methamphetamine use and was very surprised by the current allegations. She said she and father were still together, but she was willing to separate from him if he did not rehabilitate from his substance abuse problem.

Father went to the hospital in late January 2012, because of pain from kidney stones; he was prescribed Vicodin among other drugs. Due to his prescription, he was on a 30-day leave from the program effective January 27, 2012. If he were dismissed from dependency drug court (as he subsequently was), his program case would be closed. The social worker intern had referred him for biweekly testing at strategies for change, but that organization had no test results for father more recent than August 9, 2010. As of March 2, 2012, he had not enrolled in a substance abuse treatment program.

Father had made minimal progress in his case plan services and had not participated in substance abuse treatment services, general counseling, and parenting classes. He had failed to take the minor to medical and dental appointments.

The juvenile court held a contested jurisdiction/disposition hearing from May 1 to May 7, 2012. The witnesses included social workers Margaret Salvemini and Jennifer Butcher.

Salvemini, who had long experience in substance abuse assessment, counseling, and treatment, testified that parents addicted to drugs such as cocaine and methamphetamine are likely to neglect their children because the parents put pursuit of the drug ahead of the children's needs, especially their emotional needs. Children of addicted parents often experience bonding problems and developmental delays; methamphetamine can create "anger issues" and has an impact on "emotions and learning."

5

Because the parents' pursuit of the drug can bring about an irregular way of life, including the frequent presence of strangers in the home, children tend to seek out other adults in the hope of getting attention, which often leads to physical and sexual abuse. Addicted parents frequently have unstable housing situations, entailing homelessness, temporary housing, and leaving children with unsafe caretakers, all of which is especially detrimental for children under the age of three. The parents also frequently divert essential funds from providing for the children to obtaining drugs, leaving their homes without food, clothing, or power.

Methamphetamine tends to be used in "runs" where the user will go for three to five days on the drug without sleeping or eating regularly, while the children are left to fend for themselves. Social workers often find small children left alone or uncared for in the early morning hours because their parents had gone on a run and crashed.

Because it is in powder form, methamphetamine permeates its surroundings. Thus, children are exposed when they touch contaminated surfaces and put their hands in their mouths.

The fact that a parent uses methamphetamine regularly raises concerns of risk to a child, because drugs are "seductive." Moreover, drug users seek out other drug users because nonusers will not tolerate users' behavior.

Children under age three are at greater risk of abuse and neglect from methamphetamine-using parents than older children: "[A] child under the age of three cannot make themselves a peanut butter sandwich, cannot generally walk next door and tell someone what is going on, cannot fend for themselves, no one see [*sic*] those children. They're not in school, they're kind of stuck in their situation. They would be highly vulnerable."[2]

---

[2] Salvemini had not assessed or worked with the parents in this case and was not familiar with the minor.

Butcher, the case-carrying social worker from late May 2011 to the present, stated that there would be a risk in returning the minor to father "based on mainly everything that [Salvemini] testified to earlier which is the poor decision making that you see associated with methamphetamine abuse, prioritizing the use of the drug over meeting the child's needs, making bad decisions about who you're leaving the child with, who you're allowing in and out of the home, whether or not you're feeding them on schedule, changing their diaper on schedule, sleeping and not monitoring the children, things of that nature."

Father's living arrangements had changed several times since Butcher got the case. The juvenile court initially continued disposition because father did not have a place to stay with the child.[3] He stayed at a motel for two days; then he stayed with friends, sleeping in someone's living room for months; then he rented a room. Now he had another new address, which Butcher did not know anything about. When father was discharged from the hospital in August 2011, the discharge papers showed a different address from his home address.

When Butcher visited father's residence, he was not always there, but the minor usually was. Willie Ray Miller (known as Jimbo), the friend father stayed with after leaving the motel, normally watched her. Although Butcher would not have chosen him as a caretaker, she did not have "substantial concerns" about him.

Father was in denial about his substance abuse problem. His lack of honesty on this subject meant that everything he said had to be questioned.[4]

---

[3]    Butcher acknowledged that father returned to California from Wisconsin when the case was opened and did not have a home in California then.

[4]    The first time Butcher asked him about a positive drug test, he claimed that "it was from performing oral sex on a female . . . [who] had used." Butcher did not know of any evidence that a positive test for methamphetamine could come about that way.

When father was confronted at the January 2012 program meeting and offered treatment, he was told that "nobody is believing these explanation[s], they're completely implausible and you're about to lose your child. Let us do this . . . placement and get you the help that you need before you lose this child." His statement that he thought he could stop using methamphetamine on his own was a "slight acknowledgement" of his problem, but the only one so far. After the program meeting, he tested positive again. In Butcher's opinion, he could not be worked with on this problem.

Butcher acknowledged that the minor's developmental, mental, and physical needs were currently being met. She had not seen any bonding problems between father and the minor. Although she was concerned that father's drug use might lead him to keep odd hours, she had not observed that he was actually doing so. When she did not find him at home, it was during daytime working hours; if she visited in the early evening, he was there.

Father did not testify or present evidence. He opposed jurisdiction, arguing that even if he had a substance abuse problem, there had been no showing of harm or risk of harm to the minor in his care.

The juvenile court sustained the section 387 petition, making the following findings:

When the court heard the original section 300 petition in July 2011, it ordered father to test for drugs (initially for 30 days). From then until January 29, 2012, he had tested positive for methamphetamine 10 times and failed to test another four times, which counted as additional positive results. Two presumptive positive tests were confirmed as positive for methamphetamine by the laboratory; father had the opportunity to have the

---

The next time Butcher raised the topic with father, he blamed his kidney stones. Another time he mentioned an asthma inhaler; "then it went back to the kidney stones again."

8

other presumptive positive tests confirmed or not confirmed by paying $20 for lab testing, but he declined to do so.

Despite these results and the court's offer of services for substance abuse, father denied for six months that he was taking methamphetamine. He had "not been candid at all about this. He claimed it was the result of kidney stones, that his doctors would provide proof, would provide evidence, that he would prove it. That's what he said. He said it in court in prior hearings. He said it to me. There is no proof. No proof has been offered and that's because the proof does not exist."

Faced in January 2012 with the choice of doing drug treatment or seeing the department file a petition to remove the minor from his care ("choose meth or choose your child"), father "folded": he acknowledged he was using methamphetamine, but said he could stop if he wanted to. Unfortunately, those were "famous last words." After one negative test, "he resumed his positive tests which is to say he resumed using methamphetamine."

"In view of the father's consistent use of methamphetamine, his persistent false denials for months, his refusal to take up numerous offers of treatment, his final decision to choose methamphetamine over his child, in view of the extraordinary dangers of meth, the havoc that it inevitably brings to those who use it and to their families, and in view of the child's very young age and total dependency on its caregiver, the Court finds that there has been adequate showing of a substantial risk of serious physical harm both as a result of the father's inability to adequately protect and to provide regular care due to his substance abuse." By clear and convincing evidence, there was substantial danger to the minor if returned to father. The department did not have to wait to petition to remove the minor until she had suffered actual physical harm in father's care.

As to disposition, the juvenile court found insufficient evidence to justify bypassing services to father under section 361.5, subdivision (b)(13), the only provision cited by the department. Father's 1997 conviction for methamphetamine use, the

evidence of "some use in 2006 to 2008," and the current evidence did not amount to the "history of extensive, abusive, and chronic . . . use" of methamphetamine required by that provision. Therefore, the court ordered six months of services for father.[5]

DISCUSSION

I

*Jurisdictional Findings*

Father contends the juvenile court abused its discretion by exercising jurisdiction because there was no substantial evidence that the minor was at risk in father's custody. According to father, there was no nexus between his positive drug tests or refusal to enter a recommended residential treatment program and risk of serious physical harm or illness to the minor, there was no substantial evidence that the minor was adversely affected by father's positive drug tests, and the court's finding of potential risk was based only on speculation. We disagree.

Under section 300, subdivision (b), a child is subject to juvenile court jurisdiction if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to provide regular care for the child due to the parent's . . . substance abuse." This finding must be made by a preponderance of the evidence. (§ 355, subd. (a).) Once the court has found that the minor is a person described by section 300, the minor may be removed from the parents' physical custody if the court finds clear and convincing evidence that there is or would be a substantial danger to the minor's physical health, safety, protection,

---

[5] The court bypassed services to mother under section 361.5, subdivision (b)(10), (b)(11), and (b)(13).

Mother's appellate counsel filed an opening brief pursuant to *In re Phoenix H., supra,* 47 Cal.4th 835. Counsel states that she advised mother of her right to file a supplemental opening brief within 30 days. We have received no such brief from mother. Accordingly, mother's appeal is dismissed. (*Id.* at p. 838.)

or physical or emotional well-being if the minor were returned home, and there are no reasonable means by which the minor can be protected without removal. (§ 361, subd. (c).) The same standards apply to a subsequent petition alleging new facts and circumstances. (§ 342; see *In re Carlos T.* (2009) 174 Cal.App.4th 795, 806.)

"A jurisdictional finding under section 300, subdivision (b) requires: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur.' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)

"Evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300. There must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*In re James R., supra*, 176 Cal.App.4th at p. 136.)

On appeal, we apply the substantial evidence test to jurisdictional findings. We view the evidence most favorably to the findings and affirm if they are supported by evidence which is " 'reasonable in nature, credible, and of solid value.' [Citation.]" (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.)

We note at the outset that father's opening brief does not quote, summarize, or paraphrase the juvenile court's findings, but merely states how the court ruled. Because father does not squarely address the evidence cited by the juvenile court, we could find that his insufficient-evidence claim is forfeited. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1510.) However, we shall reach the merits of the claim. Doing so, we find that substantial evidence supported the court's findings.

11

The testimony of substance abuse expert Salvemini as to the usual effects of untreated methamphetamine addiction on a parent's capacity to care safely for a child, especially one as young as the minor, was undisputed. The testimony of case-carrying social worker Butcher as to father's addiction, his consistent denial thereof, and his chronic dishonesty in manufacturing excuses for his long string of positive test results, together with his failure or refusal to take advantage of the treatment programs he had been offered, established that father was an addict with no apparent motivation to change -- even when told "choose meth or choose your child." Although father was currently working and living with a roommate who could tend to the child in father's absence, the court could reasonably doubt whether either father's capacity to work or his ability to remain in association with a responsible roommate would last, given the typical instability of methamphetamine addicts' lives. In short, the court could reasonably find, based on substantial evidence, that father's untreated substance abuse problem put the minor at serious risk of potential harm, even if she had not yet suffered such harm. (See *In re R.R.* (2010) 187 Cal.App.4th 1264, 1283-1284; see generally *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824-825 [children of tender years at greater risk from absence of adequate supervision and care].)

Father asserts without citing authority that his "positive drug tests did not pose a substantial risk of future risk of serious physical harm." (Capitalization omitted.) Father merely recites the evidence that the minor has not yet suffered harm in his care, which is insufficient to rebut the evidence of potential future harm we have set out above. The same shortcoming defeats his assertion that any prediction of future harm was merely speculative.

Father asserts, citing *In re J.O.* (2009) 178 Cal.App.4th 139, that there was no "causal nexus [shown] between the court's findings of serious injury and the findings related to the parent." *In re J.O.* is inapposite. First, the court there was considering evidence of actual harm to the child, not evidence of the risk of future harm. (*Id.* at

p. 152.)  Second, the court found a lack of causal nexus as to the appellant (father) because the physical injury was caused by the conduct of the child's mother, not of the father.  (*Ibid*.)

Finally, father asserts, citing *In re James R., supra*, 176 Cal.App.4th at pages 135-136, that there was no evidence of actual risk, but only "[p]erceptions of risk," which are not substantial evidence under section 300, subdivision (b).  But in *James R.*, the parents were together, maintaining a stable home, and caring for the minors well, and neither had any demonstrated current substance abuse problem; the only evidence of risk to the minors was that the mother had a negative reaction to combining ibuprofen and beer.  (*In re James R., supra,* 176 Cal.App.4th at pp. 136-137.)  These facts are far different from the present case, where both parents are addicted to methamphetamine and father remains in denial about his addiction.

Substantial evidence supported the juvenile court's jurisdictional findings.

## II

### *Protection Of The Minor*

Father contends no substantial evidence supported the court's finding that no reasonable means existed to protect the minor without removal from his custody.  (§ 361, subd. (c).)  However, father offers no new argument on this point, but merely reiterates the arguments we have rejected in part I of the Discussion.  For the reasons given above, we conclude that the court correctly found there were no reasonable means to protect the minor without removing the minor from father's custody.  So long as father chose methamphetamine over his child, she could not be protected in his care.

13

DISPOSITION

The judgment is affirmed.


                              ROBIE      , Acting P. J.


We concur:



      BUTZ      , J.



      DUARTE     , J.


14